**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry Clark,                                    )<br>                                                        )<br>               Plaintiff,                       )<br>vs.                                             )<br>                                                        )<br>Native American Air Ambulance Inc.,  )<br>                                                        )<br>               Defendants.                   )<br>                                                        ) | No. 06-CV-2920-PHX-PGR<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment (Doc. 33) filed by Defendants[1] Native American Air Ambulance Inc., Native American Air Ambulance of Delaware, LLC, d.b.a. Native American Air Ambulance, and Omniflight Helicopters, Inc. (collectively "Defendants" or "Native Air"). The Defendants move this Court for summary judgment in their favor on all of Plaintiff's claims on the grounds that Plaintiff Larry Clark (hereinafter "Plaintiff" or "Clark") has failed to establish a prima facie case of age discrimination under the Age Discrimination in Employment Act (hereinafter referred to as the "ADEA").

---

[1] Defendants' counsel is advised to review the Local Rules pertaining to page limitations and font size (which includes footnotes). Any further noncompliance before this Court may result in the striking of documents.

I.     BACKGROUND

Native Air provides 24-hour life support air ambulance services and transport. It hired Plaintiff at age 58 as a Helicopter Pilot on October 14, 2003. Plaintiff was also 58 years old when his employment with Native Air was terminated less than a year later on June 26, 2004. Plaintiff was assigned to Native Air's base in Show Low, Arizona. During Plaintiff's relevant period of employment, Native Air investigated him for at least three safety-related policy violations, as a result of information from other employees and/or documents and logs maintained in the normal course of business: (1) flying into a snow-shower on March 2, 2004; (2) "overflying" a scheduled maintenance inspection on May 16, 2004 (i.e., flying longer than allowed between mandatory safety inspections); and (3) "hard landing" a helicopter on June 26, 2004 and failing to write an occurrence report regarding the landing or documenting the incident in the log book. Two of the incidents were serious to the extent that Native Air believed it was required to report the incidents to the Federal Aviation Administration ("FAA").

Each Native Air aircraft is equipped with a lifeport system, and each aircraft flies with a crew consisting of a pilot, a registered nurse, and a certified emergency paramedic to provide optimum patient care. As an air carrier, Native Air is heavily regulated by federal laws and regulations, and it maintains a strict commitment to safety as its foremost priority.

Clark alleges that Defendants terminated his employment as a direct result of his age. He contends that he was routinely the subject of ageist remarks from members of the flight crews.[2] One of the medical flight crew members, Dave Goedecke, advised him that, "All I've ever had was trouble with all of the old pilots this company has ever had." "We've run them off before, we'll run you off, too." On two separate occasions, the Plaintiff sent his supervisor and Native Air chief pilot, Fritz Holly, notices in compliance with the Native Air Anti-Harassment Policy advising of these comments. Mr. Holly did not forward them to

---

[2] He did not allege that his supervisors made such remarks.

- 2 -

Human Resources for investigation. He also sent an e-mail to the base advising them not to "make waves". According to her testimony, former Human Resources Director for Native Air, Melissa Beckstead, characterized Mr. Holly's instruction not to "make waves" as an inappropriate response to the comments.

Native Air contends that as a result of its investigation of Plaintiff for three separate safety-related policy violations in a three-month period, culminating in the July 4, 2004 discovery of the hard-landing incident on June 26, 2004, Native Air terminated Plaintiff's employment effective July 26, 2004.

According to Clark, the three purported incidents referenced in the Motion for Summary Judgment were no more than pretext for discrimination on the part of employees at Native Air, insufficient to justify his termination. In response to the first incident, flying into a snow storm (the complaint initiated by flight crew member Goedecke identified above), Plaintiff alleges that Fritz Holly eventually advised all the employees that the Plaintiff acted properly. However, this is supported only by Plaintiff's own self-serving deposition testimony, it is not supported by testimony of Holly-despite being deposed, nor has Plaintiff cited any other supporting evidence. In the second incident, "overflying" a scheduled maintenance inspection, FAA provisions provide that any appropriately trained pilot or mechanic may conduct these mandatory safety inspections. The Plaintiff is a licensed mechanic and claims to have performed these inspections. The third incident, the alleged "hard-landing," Clark contends was never established by the employer. Plaintiff hired his own expert witness to prepare a report which he submitted to Native Air documenting that the damage found on the helicopter was not caused by a hard-landing.

Another pilot, 39 years of age, who was hired on the exact same day as the Plaintiff, demolished his helicopter in a serious accident at Falcon Field on his first day of employment. Plaintiff claims that the pilot, Simon Ayling, was not disciplined for this occurrence, but he has no firsthand knowledge thereof. Native Air promoted Ayling to Base Manager prior to the time he was terminated for a second violation.

1　　　Plaintiff contends he was replaced by a younger employee. Native Air, however, explains that they were filling a pre-existing opening when they hired his replacement. The fact remains that the pre-existing vacancy existed for five (5) months and was not filled until the Plaintiff was terminated.

## II.　LEGAL STANDARD

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment is properly granted when, after viewing the evidence in the light most favorable to the non-moving party, no genuine issues of material fact remain for trial. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of demonstrating that it is entitled to summary judgment. Mur-ray Mgmt. Corp. v. Founders Title Co., 819 P.2d 1003, 1005 (Ariz. Ct. App. If the moving party makes a prima facie case showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that a triable issue of fact does remain. Ancell v. United Station Assocs., Inc., 803 P.2d 450, 452 (Ariz. Ct. App. 1990). The Court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the non-moving party may not merely rest on its pleadings, it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57(1986)(holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968).

The ADEA makes it unlawful "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). It is well established in the Ninth Circuit that ADEA claims that are based on circumstantial evidence of discrimination are evaluated using the three-stage burden-shifting framework articulated by the Supreme Court in McDonnell

- 4 -

Douglas Corp. v. Green, 411 U.S. 792 (1973); Enlow v. Salem-Keizer Yellow Cab Co., 389 F.3d 802, 812 (9th Cir. 2004); Diaz v. Eagle Produce Ltd., 521 F.3d 1201 (9th Cir. 2008).

Pursuant to this framework, the employee must first establish a prima facie case of age discrimination, thereby creating a presumption of discrimination. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir.2000). If the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. Id. If the employer satisfies its burden, the burden shifts back to the employee to prove that the reason proffered by the employer constitutes pretext for unlawful discrimination. Id. A plaintiff may succeed in this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (U.S. 1981)(citing McDonnell Douglas, 411 U.S. at 804-805). "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1124 (9th Cir.2000). However, critical to the analysis is the rule that "'the mere existence of a prima facie case, based on the minimum evidence necessary to raise a McDonnell Douglas presumption, does not preclude summary judgment.'" Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996) (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) ). Summary judgment is still appropriate if the employer can rebut the prima facie case with a non-discriminatory reason. Lucero v. Hart, 915 F.2d 1367, 1371 (9th Cir. 1990) (citing Reynolds v. Brock, 815 F.2d 571, 575 (9th Cir. 1987)). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Matsushita, 475 U.S. at 585-88; Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

Conclusory allegations already contained in the pleadings, which are unsupported by

factual evidence, are insufficient to defeat a motion for summary judgment. Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc., 140 F.3d 1228, 1237 (9th Cir. 1998). Similarly, an affidavit which merely recites conclusory allegations will not defeat summary judgment. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990); see also Warren 58 F.3d at 443 (while plaintiff's burden at the summary judgment stage is not overly burdensome, plaintiff cannot merely rely on generalizations).

In order to survive summary judgment, a plaintiff must produce some evidence to show that defendant intentionally discriminated against him on the bases alleged. Plaintiff may do so by producing either direct evidence or circumstantial evidence of discrimination under the now-familiar formula articulated in McDonnell Douglas and its progeny. Furthermore, the evidence must be sufficient to show that plaintiff's allegations of discrimination are more likely than not to be true. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

To establish a prima facie case of age discrimination, a plaintiff must establish that he was (1) at least 40 years old; (2) performing his job satisfactorily; (3) discharged; and (4) either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances "otherwise giving rise to an inference of age discrimination." Coleman, 232 F.3d at 1281. An inference of discrimination can be established by "showing that Defendants had a continuing need for the employees' skills and services in that their various duties were still being performed...or by showing that others not in their protected class were treated more favorably." Id. (quotation marks and citation omitted).

It is undisputed that Plaintiff is at least 40 years old and that he was discharged by Defendants, thus he has satisfied two of the four elements of the prima facie case of discrimination under the ADEA. Whether Plaintiff has satisfied the remaining two elements, however, remains to be determined.

Defendants argue that Plaintiff has failed to establish a prima facie case of age discrimination under the ADEA on the grounds that (1) he cannot show that he was

performing his job satisfactorily; and (2) he cannot show that he was replaced by a substantially-younger employee with equal or inferior qualifications or that he was discharged under circumstances otherwise giving rise to an inference of age discrimination; and (3) even assuming that Plaintiff can establish a prima facie case of age discrimination, Defendants had legitimate, nondiscriminatory reasons for Plaintiff's termination that are not a pretext for discrimination. Furthermore, Defendants contend that Plaintiff did not make reasonable efforts to obtain subsequent employment following his termination by Defendants.

### A.     Job Performance

Defendants contend that during Plaintiff's nine-month period of employment with Native Air, he was the subject of three separate and distinct safety-related policy violation investigations thereby establishing that he was unable to perform his job satisfactorily and which therefore resulted in his termination.

**First Violation**

The first investigation occurred in March 2004 after a fellow crew member, Dave Goedecke (hereinafter "Goedecke") submitted an occurrence report to Native Air regarding an incident on March 2, 2004, in which he reported that Plaintiff flew an aircraft through snow and rain showers, contrary to the safety policies of Native Air. Goedecke stated in his report that he advised Plaintiff at least three times of Goedecke's concern regarding reduced visibility. The following day Goedecke reported his safety concerns about the flight to the Base Manager. Plaintiff does not dispute that Goedecke raised safety concerns regarding Plaintiff's flight into inclement weather conditions. Both Plaintiff and Native Air testified that safety is paramount when flying. Plaintiff was verbally counseled regarding the incident. The fact that Plaintiff does not believe that Goedecke had reason to be concerned for his safety is immaterial. It is only material that Native Air believed, given the circumstances, that Goedecke's safety concerns were reasonable and it took appropriate disciplinary action to ensure the safety of all its employees. Villiarimo v. Aloha Air, Inc.,

- 7 -

281 F.3d 1054, 1063 (9th Cir. 2002).  It is significant to note that this was Plaintiff's first disciplinary action, and his employment was not terminated solely for this conduct.[3]

**Second Violation**

The second incident of record occurred approximately two months later, on May 16, 2004, when Native Air's flight log reflected that Plaintiff had "overflown" a scheduled maintenance inspection by 1.3 hours.  Plaintiff conceded that Airworthiness Directive 2001-26-55 requires tail rotor blades to be inspected every ten hours of flight time, and pursuant to FAA regulations and Native Air policies, aircraft cannot be flown past such mandatory inspection intervals. Furthermore, Plaintiff acknowledged that flying an aircraft beyond its mandatory inspection interval constitutes gross negligence.  Plaintiff contend, however, that he performed the necessary inspection and as a licensed pilot, he was *permitted by FAA regulations* to perform the inspection.  Notwithstanding, his conduct was in clear contravention to *Native Air policy* which requires all airworthiness inspections to be performed by an "appropriately certified technician, who is trained, qualified and authorized by Native American Air Ambulance."   Moreover, Native Air policies require that the Native Air certified technician sign the log to certify that the inspection was performed. Plaintiff further acknowledges that the log book was not signed to reflect that any inspection was performed.[4]

Even assuming FAA regulations permitted Plaintiff to conduct the maintenance inspection, that fact is irrelevant to the outcome of this matter.  Native Air, *Plaintiff's employer,  requires a Native Air certified technician* to perform the inspection and sign the log book, both of which Plaintiff concedes did not occur.  The log book entry indicates that a required safety-inspection was *not* performed and the aircraft was overflown by 1.3 hours.

---

[3] See infra, Section 'B' entitled, "Replaced by Substantially Younger Worker/Inference of Age Discrimination."

[4] Plaintiff acknowledged receiving a copy of Native Air's employee handbook at the time he was hired.

- 8 -

Native Air cannot rely on the verbal statements of its employees that FAA-required safety inspections of its aircraft which are used to transport patients in critical and emergent situations, have been performed. Despite the fact that Plaintiff asserts that he performed an inspection of the aircraft, it is undisputed that the log book entry reflects that Plaintiff flew the aircraft longer than permitted between required inspections. The Court agrees with Defendant that Native Air is entitled to require appropriate documentation of a required maintenance inspection of its aircraft, otherwise it cannot ensure that the inspection was performed by a qualified individual.

Moreover, Plaintiff's disagreement with Native Air's policy is irrelevant to the matter at hand. It is undisputed that by virtue of the services it provides, Native Air is compelled to establish and maintain safety policies, and Plaintiff undisputedly violated those policies. Thus, Plaintiff's assertion that "[t]here was never a safety issue," does not change the fact that a violation occurred and that Native Air was required to disclose the overflown inspection to the FAA.

As a result of Plaintiff's violation of company policy, Native Air contends that it issued written discipline to Plaintiff regarding the incident. Plaintiff contends that he did not receive the written reprimand until the lawsuit commenced. The Court recognizes that particularly in light of the critical services it provides in potentially dangerous and hazardous situations, Native Air is compelled to enforce its policies, specifically those related to safety.

The Court acknowledges that this second safety violation did not alone result in the termination of Plaintiff's employment.

**Third Violation**

Less than six weeks following his second violation, on July 4, 2004, Native Air discovered and investigated[5] damage to the aircraft flown by Plaintiff. According to Native

---

[5] The investigation involved numerous pilots, medical staff, and mechanics, as well as multiple inspections of the aircraft.

- 9 -

Air, the outcome of the investigation was that Plaintiff landed the aircraft "hard" on June 26, 2004, and failed to submit an occurrence report regarding the incident; he also failed to document the incident in the log book.

Plaintiff disputes that there was a hard-landing and further asserts that *his* post-incident inspection of the aircraft did not reveal any damage. As a result of the damage, Native Air and the National Transportation Safety Board (hereinafter "NTSB") conducted extensive investigations into the incident, as required by the FAA. John Welker, the flight nurse present on board with Plaintiff on June 26, 2004, confirmed that there was in fact a hard-landing. An inspection of the aircraft by Chad Barta, Native Air's Director of Maintenance, concluded that Plaintiff had made a hard-landing that resulted in damage to the aircraft. An inspection of the aircraft by Bill Biddlecome of American Eurocopter Corporation concluded that the damage to the aircraft was consistent with that of a hard-landing. Furthermore, the NTSB's investigation into the incident concluded that Plaintiff had made a hard landing. Native Air conducted a thorough investigation of its flight logs and conducted extensive interviews of its flight crews and could not find any evidence of any incident – other than the hard landing on June 26, 2004 – that could have caused the damage to the aircraft.[6]

Plaintiff contends that he reported the June 26, 2004 incident to his Base Manager upon completion of the flight and that their post-incident inspection – which Plaintiff did not document – revealed no damage to the aircraft. However, Native Air's extensive investigation into the incident reached a different conclusion. Plaintiff's disagreement with the conclusion reached by Native Air following its investigation is in fact immaterial to the analysis, as Native Air was entitled to rely on the overwhelming evidence that led to its conclusion that Plaintiff's hard-landing was the only incident that could have caused the

---

[6] Another individual speculated that the damage could have been caused by vandalism, however, such is mere speculation. Notwithstanding, Native Air depended on the investigative reports to come to its own conclusion.

damage to the aircraft. Villiarimo v. Aloha Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002)(It is not critical whether the employer is objectively false. Rather, courts "only require that an employer honestly believed its reasons for its actions, even if it s reason is foolish or trivial or even baseless.")(quoting Johnson v. Nordstrom, Inc., 260 F.3d 727,733 (7th Cir. 2001)). Nevertheless, Plaintiff failed to submit an occurrence report regarding the incident that did occur that day, nor did he document the incident in the log book, themselves violations of safety policies.

Multiple employees were disciplined as a result of the incident and the failure to discover the damage through routine inspections,[7] and Plaintiff, as pilot of the aircraft, was terminated.

Based on Plaintiff's multiple safety-related incidents which occurred in a very short time span, Native Air terminated Plaintiff's employment. According to the evidence, there is no dispute that in a few short months, Plaintiff was reported for flying in unsafe conditions, Plaintiff overflew the plane and improperly performed an inspection thereon, he failed to sign the log certifying that an inspection was performed, and he was reported to have made a hard landing which allegedly resulted in damage to the aircraft. Consequently, Plaintiff cannot establish that he was performing his job satisfactorily at the time of his termination, which is a required element of a prima facie case of age discrimination. Defendants are therefore entitled to summary judgment. Coleman, 232 F.3d at 1281.

**B.    Replaced by Substantially Younger Worker**

Plaintiff contends that he was replaced by a substantially younger employee with equal or inferior qualifications. However, the record is completely void of any such

---

[7] Defendants assert that had Plaintiff reported the incident in accordance with company policy, the maintenance crews that inspected the aircraft prior to the discovery of the damage would have had a better chance at discovering the damage earlier, and they would have likely been more diligent in their inspections.

- 11 -

evidence. Plaintiff contends that he was replaced by Randy Higley[8] (hereinafter "Higley"), who he suggests is substantially-younger and less qualified than Plaintiff. Higley applied for employment as a pilot for a position at Show Low which Native Air had been seeking to fill since May 2004 prior to Plaintiff's July 2004 termination. Defendants contend that Higley was hired in September 2004 to fill the vacancy that existed at the time he had applied. No other helicopter pilots were hired for Show Low until July 2006. Because Plaintiff cannot establish that he was replaced by a substantially-younger employee with equal or inferior qualifications, his prima facie case of age discrimination fails, and Defendants are entitled to summary judgment. Coleman, 232 F.3d at 1281.

### C.     Inference of Age Discrimination

Although Plaintiff argues otherwise, the Court has not found direct evidence establishing that Plaintiff was terminated based on his age. Plaintiff was hired *and* terminated at 58 years old. According to Native Air, in 2005, when it first learned of Plaintiff's allegation of age discrimination, every pilot employed by Native Air was over the age of 40. Of the six pilots employed at Show Low between 2002 and 2005, four of those pilots, including Plaintiff, were over the age of 50. Of the pilots employed by Native Air company-wide between January 2002 and February 2005 – a total of 96 pilots – nearly half were over the age of 40, 19 were over the age of 50, and 8 were over the age of 60.[9] Significantly, of the 60 pilot whose employment ended with Native Air during that time

---

[8] Although younger than Plaintiff by 13 years, Rigley is also in the protected age group under McDonnell Douglas.

[9] The number of Native Air pilots over the age of 60 was the same as the number of Native Air pilots between the age of 20 and 30. Notably, the number of separations for pilots between the age of 20 and 30 was the same as for pilots over the age of 60.

- 12 -

frame – both voluntary and involuntary – only 13 of those of the pilots were over the age of 50, and only 5 over the age of 60. [10]

Defendant is correct in arguing that the fact that Plaintiff was terminated nine months after he was hired undermines any inference of age discrimination. It is well established in the Ninth Circuit that the short time between Plaintiff's hiring and firing creates a strong inference that there was *no* discriminatory motive. See Bradley v. Harcourt, Brace, & Co., 104 F.3d 267, 270-71 (9th Cir. 1996)( "[W]here...both actions[11] occur within a short period of time, a strong inference arises that there was no discriminatory motive."). Furthermore, in accordance with Ninth Circuit precedent, if Native Air were biased against older workers, it would be unreasonable to believe that it would have initially hired Plaintiff. See Diaz, 521 F.3d at 1209 (2008). Significantly, the Bradley court explained:

> The temporal proximity between each Plaintiff's hiring and layoff also makes it unlikely that age later developed as the reason for the discharges. The difference in physical and mental capacity between an average 65 year-old and an average 66 year-old, or between a 58 year-old and a 63 year-old, is not significant enough to warrant an inference of anything but the most arbitrary bias.

See Bradley, 104 F.3d at 270-71 (9th Cir.1996); See also Diaz, 521 F.3d at 1209, (9th Cir.2008). The Native Air employees involved in hiring Plaintiff were also those involved in the decision to terminate his employment, weighing against an inference of age discrimination. The Ninth Circuit further stated in Bradley that, **"**[o]ne is quickly drawn to the realization that claims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." Bradley, 104 F.3d at 270 -271 (9th Cir.1996)(citing Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991) (internal quotations

---

[10] Defendant presently employs 40 pilots who are the same age or older than Plaintiff out of a total of approximately 300 pilots.

[11] By "actions," the court is referring to the hiring and firing of an employee.

- 13 -

omitted). The Bradley court therefore held that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff...a strong inference arises that there was no discriminatory motive." Id. at 271. Melissa Beckstead, Director of Human Resources, was involved in both the decision to hire and fire Plaintiff. The other individual responsible for Plaintiff's hiring, Chief Pilot Fritz Holly, also concurred in the termination decision.[12] Consequently, in the present matter, authority is clear that because the same individuals were involved in the hiring and firing of Plaintiff, a strong inference that there was no discriminatory motive involved exists.

Plaintiff further alleges that another Native Air employee who is substantially-younger than Plaintiff was not discharged for a helicopter accident on his first day of employment, thereby creating an inference of discrimination. However, according to the record, the cause of that crash was initially determined by the FAA and NTSB to be the result of mechanical failure of the aircraft. In the event that the circumstances of the crash changed through further investigation, Native Air was nevertheless entitled to rely on its opinion regarding the cause of Mr. Ayling's accident in determining whether termination was appropriate under the circumstances. Additionally, the Court notes that Plaintiff was not terminated after his first violation nor after his second, thus these facts are distinguishable from the facts in the present matter and fail to support Plaintiff's argument.[13] The Court finds that Plaintiff cannot establish that he was terminated under circumstances giving rise to an inference of age discrimination, and Defendants are therefore entitled to summary judgment. Coleman, 232

---

[12] The Court finds that the ages of the Native Air superiors further undermines any inference of age discrimination. Mr. Holly was over the age of 50 at the time, and the person most responsible for the decision to terminate Plaintiff and Les Permenter, Director of Operations, is three years older than Plaintiff.

[13] Mr. Ayling was later terminated in May 2005, at age 40, for failing to adequately perform pre-flight safety procedures on an aircraft. Native Air's termination of Mr. Ayling establishes that Native Air enforces its safety rules in its flight operations and terminates pilots for safety infractions.

- 14 -

F.3d at 1281.

### D. Legitimate Non-Discriminatory Explanation

Assuming Plaintiff was able to establish a prima facie case of age discrimination, the burden would then shift to Defendants to provide a legitimate, non-discriminatory explanation for his termination. McDonnell Douglas, 411 U.S. 792 (1973); Diaz, 521 F.3d 1201 (9th Cir. 2008). Native Air has successfully satisfied its burden of setting forth legitimate nondiscriminatory reasons for terminating Plaintiff's employment by citing the details of Plaintiff's three safety violations as the reason therefor. 29 U.S.C.A. § 621. Accordingly, the burden switches to Plaintiff to establish that the reasons set forth by Native Air were simply pretext. McDonnell Douglas, 411 U.S. 792 (1973); Diaz, 521 F.3d 1201 (9th Cir. 2008).

**Pretext**

Again, assuming Plaintiff had established a prima facie case of age discrimination, and Native Air has now satisfied its subsequent burden, the final stage of the McDonnell Douglas analysis requires Plaintiff to raise a genuine issue of material fact concerning whether the reasons for discharge proffered by the employer are pretextual. Pretext can be illustrated in ADEA cases either by directly persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employers' proffered explanation is unworthy of credence. Diaz, 521 F.3d at 1213 (2008). In the pending matter, there is no dispute that any of the aforementioned incidents occurred.

In Diaz, the court held that a plaintiff could not avoid summary judgment on pretext because evidence proffered by the employer that employee caused significant damage to company property was undisputed. Diaz, 521 F.3d 1201. In the case *sub judice*, it is undisputed that Plaintiff was the subject of three separate investigations into safety-related policy violations during his nine month employment with Native Air. Furthermore, it is immaterial whether the violations actually occurred; the material issue is whether the employer, Native Air, believed the reasons for its actions, even if those actions were

mistaken. Villiarimo, 281 F.3d at1063 (9th Cir. 2002)(It is not critical whether the employer is objectively false. Rather, courts "only require that an employer honestly believed its reasons for its actions, even if it s reason is foolish or trivial or even baseless.")(Quoting Johnson v. Nordstrom, Inc., 260 F.3d 727,733 (7th Cir. 2001)). Plaintiff contends that despite the violations, age-based comments made by crew members and the company's investigation thereof nevertheless constitute evidence of age discrimination and establish that the violations, Native Air's proffered reasons, are unworthy of credence and are pretext for age discrimination. However, as accurately pointed out by Defendants, Plaintiff has not brought a claim for offensive work environment. The company's investigation of and response to such comments is relevant as part of the Faragher/Ellerth affirmative defense to *offensive work environment* discrimination. See Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).[14]  Neither the company's handling of the crew members' comments nor the comments themselves are probative as to whether the aforementioned safety violations-the reasons cited for the Plaintiff's termination-were pretextual.

Plaintiff contends that "the most damning evidence, however, is an e-mail presented to Permenter [supervisor] during his deposition in which Fritz Holly confirmed to Larry Clark that an independent expert had been retained and indicated that it was possible that damage was not caused by a hard landing. Mr. Permenter confirmed that, if he had been presented with this information, it is very possible his decision concerning the termination of Larry Clark would have been different." In examining the exact deposition testimony, Mr. Permenter did not in fact state that it is very possible his decision to terminate Clark's employment would have been different. Rather, in response to a deposition question regarding whether a particular email pertaining to the independent investigator may have

---

[14] According to the record, none of the alleged ageist remarks reported by Clark were made by anyone in supervisory or managerial positions.

- 16 -

changed his decision to recommend termination, he simply stated, "Possibly. However, Fritz was part of this discussion. Fritz generated this. He should have brought me into this and said, 'Listen, there is some doubt to this.'" [Doc. 41-5.] The Court finds that although interesting, this information does not establish pretext for age discrimination. At most it indicates poor communication within management at Native Air. Consequently, Plaintiff has failed to raise a genuine issue of material fact as to whether the reasons for discharge proffered by Native Air for terminating Plaintiff's employment were pretext for discrimination.[15]

III. CONCLUSION

The Court finds that Plaintiff is unable to establish a prima facie case of age discrimination. Furthermore, Plaintiff is unable to establish that Native Air's proffered reasons for his termination were anything but legitimate and nondiscriminatory. Therefore, the Court need not address the issue of whether Plaintiff mitigated his damages.

Accordingly,

IT IS HEREBY ORDERED **GRANTING** Native Air's Motion for Summary Judgment (Doc. 33) in favor of Native Air and against Clark.

IT IS FURTHER ORDERED that the Clerk of Court shall close this case accordingly.

DATED this 24th day of March, 2009.

Paul G. Rosenblatt
United States District Judge

---

[15] The Court notes that Native Air provided three separate and distinct violations for which it based Clark's termination of employment.

- 17 -